IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SURFSIDE JAPANESE AUTO PARTS )
AND SERVICE, )
 )
      Plaintiff, )
 )
v. ) Case No. 18-CV-487-TCK-FHM
 )
BERKSHIRE HATHAWAY )
HOMESTATE INSURANCE COMPANY, )
 )
      Defendant, )

# OPINION AND ORDER

Before the court are the Motion to Bar Date of Loss Opinions of Kelly Parker and the Motion to Bar Date of Loss Opinions of George Parrish filed by Defendant Berkshire Hathaway Homestate Insurance Company ("BHHIC") Docs. 42, 45. Plaintiff Surfside Japanese Auto Parts and Service opposes the motions. Docs. 50, 52.

**I. Background**

Plaintiff is insured under BHHIC Commercial Property Insurance Policy No. 01PRM30729-01 (the "Policy"), effective from August 15, 2016 to August 15, 2017 ("Policy Period"). Ex. A, p. 4. The Policy provides coverage for direct physical loss of or damage to covered property during the Policy Period, subject to all terms, conditions, limitations and exclusions set forth in the Policy. *Id.*, p. 27.

Plaintiff owns an automobile repair facility located at 6247 E. 15th Street, Tulsa, Oklahoma 74112. *Id.*, Ex. B, Murphy Dep., 5:22-25, 7:9-12. The building has three metal roof sections: a south section built in 1959, a middle section built in 1984 and a north section built in 1989. *Id.*, 11:8-14. Plaintiff claims that a hail storm damaged its metal roofs in April or May of 2017. Plaintiff's retained expert, Kelly Parker, and a roofing contractor, George Parrish, have both

opined that the damage was caused by hail storms that occurred in April of 2017. According to Parker, hail stones must be at least .75 inches in size to cause damage to a metal roof. Ex. C, Parker Dep., 36:18-20.

## II. Applicable Law

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999). The proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*); Fed. R. Evid. 104(a). A trial court's gatekeeper's duty requires two separate inquiries: (1) whether the witness is qualified to offer the opinions he is espousing and (2) whether the proponent of the witness has proven by a preponderance of the evidence that its witness's opinions are both relevant and reliable. *Kumho Tire,* 526 U.S. at 141, 152.

In *Daubert*, the Supreme Court identified four nonexclusive factors the trial court may consider to assist in the assessment of reliability: (1) whether the opinion at issue "can be (and has been) tested;" (2) whether the theory or technique has been subjected to peer review and publication; (3) in the case of a particular scientific technique, the known or potential rate of error; and (4) the degree of acceptance of the opinion within the relevant scientific community. 509 U.S.

at 593-94. *See also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004). "Under *Daubert*, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology renders the expert's testimony inadmissible." *Goebel v. Denver and Rio Grande western R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003).

This list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Dodge v. Cotter Corporation,* 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Kumho Tire*, 526 U.S. at 150). "[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire, Id.* at 141-42 (emphasis in original).

An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork. *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered").

**III. Analysis**

In this case, BHHIC does not challenge either expert's specialized knowledge in the area of assessing hail damage, nor does it deny that the roof incurred hail damage at some time in the past. However, it asserts that the experts' testimony that the hail damage occurred during the covered period is not based on sufficient facts or data and is not the product of reliable principles and methods.

### A. Kelly Parker

Plaintiff's retained expert, Kelly Parker, inspected Plaintiff's property on August 24, 2017, and concluded that it sustained aesthetic/cosmetic hail damage in April or May, 2017. Ex. D, Parker Report. His opinion is based on his conclusion that (1) the roof had been damaged by hail larger than .75 inches in size sometime within two years preceding his inspection and (2) hail history reports from Hail Trace[1] and StormerSite showing hail larger than .75 inches "near" Surfside's property during the covered period.[2] *Id.*, pp. 1-5.

Parker'conclusion that the property was struck by hail within the covered period is based in part on his observation of:

- "hail impacts" of over one inch in diameter on the roof, the south side of the building, and the A/C condenser fins on the west side; Ex. D, ¶¶1, 2, 4, 9-13, 15-17;

- the presence of three scuff marks in siding that was stained three years before his inspection; *Id.*, ¶¶ 5, 6 and

- a 1.25-inch and a 1.5-inch spatter mark on a metal roof vent.[3] *Id.*, ¶3.

Parker claims the scuff marks establish that hail struck the cedar siding within three years of his inspection. *Id.*, Ex. D, p. 4, ¶ 6. He testified that, based on his experience, hail spatter marks

---

[1] Although Parker, in his deposition, referred to the report as "Hail Trace," the title of the report is actually "Hail Impacts Report." Ex. D, p. 50.

[2] Parker testified that hail stones must be at least .75 inches to cause damage to a metal roof. *Id.*, Ex. C, Parker Dep. 36:18-20.

[3] A hail spatter mark is a mark caused by a hail stone that displaces dirt and oxidization from a surface, but does not cause physical damage to the underlying property component. Doc. 42, Ex. C, Parker Dep., 65:13-21. Parker testified that based on his experience, hail spatter marks remain visible for up to two years, but one cannot determine the age of a spatter mark by visual observation. *Id.*, 65:22-66:15. Based on the presence of a 1.25-inch and a 1.5-inch hail spatter mark on a metal roof vent, Parker concluded that Plaintiff's property was struck by hail of at least 1.25-inch size "somewhere between several months and two years" before his August 24, 2017 inspection. *Id.*, 95:5-96:7.

remain visible for up to two years, but their age cannot be determined by visual observation. *Id.*, Ex. C, 65:22-66:15. Accordingly, he concluded that Surfside's property was struck by hail of at least 1.25-inch size "somewhere between several months and two years" before his August 24, 2017 inspection. *Id.*, 95:5-96:7; Ex. D, p. 5. Thus, Parker's roof inspection does not, in and of itself, establish the date of loss.

Citing the Hail Trace and StormerSite reports, Parker identified three potential dates of loss within the covered period:

> 4-04-17 – 1.5" hail – Hail Trace
> 4-25-17 – 1" hail – StormerSite
> 4-28-17 – 1.25" hail – StormerSite

*Id.*, p. 2.

Parker does not know how the StormerSite or Hail Trace reports were compiled or what algorithms the organizations use to determine the presence or size of hail. Ex. C, 45:3-5; 47:4-7; 50:4-10; 52:6-9. He uses weather reports regarding the presence and size of hail only as one "data point" in his investigation because "hail within a hailstorm can vary in size" and "[j]ust because a report shows that it was there doesn't mean it really was." *Id.*, 42:9-23; 43:18-25; 44:10-15. He stated that "on one block, you could have half-inch hail and one block over you could have one-inch hail, and that on one spot you could have half-inch hail and four miles away, no hail." *Id.* 42:12-16. He acknowledged that StormerSite reports indicating "hail one inch or higher *near* the address" do not define the term "near,' and he does not know the meaning of the term as used in the report. *Id.*, 51:11-17 (emphasis added). According to StormerSite's website, its reports include storms with the "slightest possibility of producing hail. *Id.*, Ex. F. The website also indicates that StormerSite's data is obtained from "social media and our small network of spotters." *Id.* Parker

5

testified that between what he observed at the site versus what was in a hail report, he would "absolutely" go with what he observed at the site. *Id.*, 44:20-24.

The StormerSite report indicates that hail ranging up to at least .75 inches in size occurred "near" Surfside's address 21 times between September 17, 2011 and August 15, 2016, including six times between August 25, 2015 and August 15, 2016, with multiple reports of hail over 2.00-inch size and one report of hail of 4.75-inch size. Ex. E. According to StormerSite, the largest hail in the two years prior to Parker's inspection occurred prior to the policy inception, on July 28, 2016, when hail ranged up to 1.75-inches. *Id.*

Additionally, each of the three "Possible Dates of Loss" identified by Parker are problematic. First, the Hail Trace report contains no reference to 1.5" hail on April 4, 2017. Instead, it reports 1.25-inch sized hail in "Tulsa" and .75-inch sized hail in "South Tulsa" on April 4, 2017. *Id.*, p. 53. Furthermore, the Hail Trace report references "Max Hail Size" of 1.5" with respect to Latitude 36.088 and Longitude -95.875, which are the coordinates for an empty field at E. 51st St. and S. 94th E. Ave. in Tulsa—five miles away from Surfside's property. Ex. D, pp. 40-54; Ex. G, Map Coordinates.

Second, the StormerSite Hail History Reports indicate a "possible" range of hail size "near" a particular address. *Id.*, Ex. F. However, they do not define "near," and Parker conceded he doesn't know what StormerSite's reference to "near" means. *Id.*, Ex. C, 51:11-17. Moreover, the April 25, 2017 StormerSite report of one-inch hail is based on a hail spotter report from Tulsa International Airport, 4.6 miles away from Surfside. Ex. F.

Finally, Parker's indication of 1.25-inch sized hail on April 28, 2017 appears nowhere in StormerSite. *Id.*, Ex. E, pp. 1-8. Instead, the StormerSite report lists "possible" 1.00 to 1.50-inch

6

sized hail of "near" Surfside's address on that date, and the "confidence indicator" line below the 1.00 to 1.50-inch indicates a relatively low level of confidence in the stated range. Ex. E.

Moreover, if the hail reports are to be believed, StormerSite reported hail up to .75-inch sized or larger on 21 dates between September 17, 2011 and the August 15, 2016 start of the Policy Period, including multiple reports of hail over 2 inches and one report of 4.75-inch size hail. *Id.*, Ex. E.

Rule 702 "imposes on a district court a gatekeeper obligation to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). Parker's opinion as to the date of loss is not based on sufficient facts or data nor is it the product of reliable principles and methods. Accordingly, BHHIC's motion to exclude his testimony must be granted.

**B. George Parrish**

Roofing contractor George Parrish has also opined that the hail damage to the Surfside property occurred within the policy period. *Id.*, Ex. D., Parrish Dep., 39:21-25. Parrish testified that he was working on the roof of a nearby building when he approached Plaintiff unsolicited and offered to inspect the property. *Id.*, 30:25-31:3; 36:19-21. He observed hail damage on the roof, and told Murphy that, based on a weather report, the hail damage was recent. *Id.*, 38:7-12; 39:21-40:10.

In formulating his opinion, Parrish relied on his inspection of the roof damage to the Surfside building; the damage to "other buildings,"[4] the closest of which he described as being "less than a half a mile to half a mile, something like that" from Surfside; the StormerSite.com

---

[4] Parrish identified the buildings as Paintmaster, ImageNet and Truck Performance. Ex. D, 34:11-20.

report for April 28, 2017; and a Verisk weather report showing .75-inch sized hail "at the address" on April 28, 2017. *Id.*, 31:1-3; 34:16-19; 109:1-5; Ex. F.

Parrish admitted that the size of hail varies "block to block" and can be "much different" half a mile away. *Id*. at 55:20-56:1. He did not remember the age of the roofs on the other buildings in the area, nor did he remember the age of the front section of the Surfside roof. *Id.* at 110:2-12. Parrish does not know how the StormerSite or Verisk reports are compiled. *Id.* at 49:7-10; 65:8-18. Like Parker, he does not know the meaning of the term "near" in the StormerSite reports. *Id.* at 55:20-56:1. Accordingly, the Court concludes that while evidence of hail damage to a building within a block of Surfside might be admissible to support Surfside's claim, evidence of hail damage to buildings half a mile away from the property is not.

With respect to the hail reports, as previously noted, the StormerSite report indicates up to one-inch size hail on April 25, 2017, but the report was based on a hail spotter report from Tulsa International Airport—4.6 miles away from Surfside's property. *Id.*, Ex. E. The report indicated a 1.00 to 1.5-inch range of "possible" hail "near" Surfside but did not define "near," and the "confidence indicator" line underneath the 1.00 to 1.50-inch range indicates a relatively low level of confidence in the stated range. *Id.*

The Verisk Report, which indicates "Est(imated)" .75-inch size hail "at the address," contains very little information about how it was compiled, beyond using unidentified "numerical model" and "proprietary algorithms." *Id.*, Ex. F. The disclaimer in the report states that it "does not warrant and makes no representations regarding the completeness, currency, accuracy, or predictive value of the report." *Id.* It also indicates that there were seven instances of hail between .75 and 1.00 inch in size before the policy period dating back to June 3, 2012. *Id.*

The Court concludes that—like the Parker opinion—Parrish's opinion as to the date of loss is not based on sufficient facts or data nor is it the product of reliable principles and methods. Accordingly, BHHIC's motion to exclude his testimony must be granted.

## IV. Conclusion

Defendant's Motions to Bar Date of Loss Opinions of Kelly Parker and George Parrish (Docs. 42, 45), are hereby granted.

ENTERED this 25th day of October, 2019.

_____
TERENCE C. KERN
United States District Judge